UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARTIZE EVANISH,

        Petitioner,        Case No. 1:22-cv-11338

v.        Honorable Thomas L. Ludington
        United States District Judge

JOHN CHRISTIANSEN,

        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

In 2018, Petitioner Martize Evanish was convicted in state court of numerous crimes after he, his brother, and other unknown individuals threatened, kidnapped, and sexually assaulted a sex worker. Petitioner now seeks federal habeas relief on five grounds. As explained below, each ground lacks merit. So the Petition for a Writ of Habeas Corpus will be denied. Because reasonable jurists would not debate that Petitioner's habeas claims lack merit, this Court will additionally deny a certificate of appealability. And because an appeal would not be taken in good faith, Petitioner will be denied leave to appeal *in forma pauperis*.

**I.**

In 2018, a jury in Genesee County, Michigan, convicted Petitioner of the following offenses:

(1)    Two counts of first-degree criminal sexual conduct in violation of MICH. COMP. LAWS § 750.520b;

(2)    Kidnapping in violation of MICH. COMP. LAWS § 750.349;

(3)    Armed robbery in violation of MICH. COMP. LAWS § 750.529;

>   (4)     Possession of a weapon directing an electrical current—a taser—in violation of MICH. COMP. LAWS § 750.224a;
>
>   (5)     Being a felon in possession of a firearm in violation of MICH. COMP. LAWS § 750.224f; and
>
>   (6)     Four counts of felony-firearm in violation of MICH. COMP. LAWS § 750.227b

*People v. Evanish*, No. 345355, 2020 WL 2095935, at *1 (Mich. Ct. App. Apr. 30, 2020)

The following facts, summarized by the Michigan Court of Appeals, are presumed correct on habeas review. *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

>   On August 29, 2015, at approximately 3:00 a.m., SK was walking alone, soliciting herself for sex work. SK testified that she had used heroin and crack cocaine earlier in the day, but said that she was not high at the time. She testified that [Petitioner] picked her up in a car and she agreed to perform oral sex in exchange for money. [Petitioner] drove her to the parking lot of an abandoned elementary school, and four additional men got into the car. They threatened her with guns while [Petitioner] repeatedly activated a Taser to frighten her. [Petitioner] called his brother, Cordario Colter, and said, "We got one, come to the spot." The men drove to an abandoned trailer park and forced SK into a trailer. The men ripped off SK's shirt, then took turns forcing SK to have oral and vaginal sex with them. She testified that they called her names, kicked her, and hit her, while [Petitioner] activated the Taser nearby. Eventually, a sixth man showed up on a bicycle, threatened SK with a gun, forced her to perform oral sex on him, and urinated in her mouth. After approximately three hours, the men dropped SK off in an unfamiliar neighborhood and drove away.
>
>   SK eventually found help and was able to show responding officers the trailer where she believed the attack occurred. She was transported to a hospital and given a sexual assault examination. The attending nurse testified that SK had multiple injuries, but only one appeared to be fresh, and that SK did not have vaginal trauma, which was not surprising given her age. The nurse collected samples from SK's hands, mouth, and vaginal area for testing.
>
>   In October 2015, [Petitioner] and Colter allegedly committed another sexual assault, which [Petitioner] was arrested for on October 26, 2016. As part of the investigation into that assault, officers discovered a gun and a Taser inside [Petitioner]'s vehicle. On November 6, 2015, SK recognized photos of [Petitioner] and Colter on a Facebook post and contacted the detective in charge of her case. At trial, she testified that she was 100% confident that [Petitioner] was the driver who

> picked her up and that Colter was the last man who arrived on the bicycle. Colter was charged as a co-defendant.
>
> Because of a delay with the DNA testing, a felony complaint for SK's assault was not filed until August 1, 2017, and a preliminary examination was held on August 22 and 23, 2017. Meanwhile, [Petitioner]'s case related to the October 2015 assault faced numerous delays. On November 20, 2017, the prosecutor filed a motion to consolidate [the] two cases, arguing they were factually similar. On January 29, 2018, the trial court ruled to keep [Petitioner]'s two cases separate. A trial date for SK's assault was set for April 18, 2018. Two days before trial was to start, Colter reached a plea agreement, which included his agreeing to testify against [Petitioner]. On the day [Petitioner]'s trial was to begin, the trial court noted that [Petitioner] did not have adequate time to prepare for Colter's testimony, so it would not be fair to continue with the trial as scheduled. At the same hearing, [Petitioner] requested new counsel. Acknowledging that it would take time for a new lawyer to be brought up to speed on [his] case, the trial court told [Petitioner] that he would have to choose between new counsel or a speedy trial. [Petitioner] chose new counsel and affirmatively waived his right to a speedy trial. Trial began on July 17, 2018.

*Evanish*, 2020 WL 2095935, at *1.

Petitioner was sentenced as a fourth habitual offender to 50–75 years of imprisonment for the criminal sexual conduct, kidnapping, and armed robbery convictions; 10–15 years for possessing a taser; and 20–30 years for the felon-in-possession conviction. *See People v. Evanish*, Case No. 17-FC-041897 (7th Cir. Ct., Genesee Cnty., Mich. Aug. 20, 2018). These sentences ran concurrently with each other but were consecutive to a 2-year prison sentence for Petitioner's felony-firearm conviction. *See id.*

The Michigan Court of Appeals affirmed Petitioner's convictions on direct appeal in April 2020. *See generally Evanish*, 2020 WL 2095935, at *2–5. Nearly one year later, the Michigan Supreme Court denied Petitioner's application for leave to appeal further. *People v. Evanish*, 956 N.W.2d 189 (Mich. 2021). So Petitioner turned to federal court and, in June 2022, filed a Petition for a Writ of Habeas Corpus. ECF No. 1.

## II.

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision:

(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of federal law occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A federal court may not "issue [a habeas] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (noting that a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law"). Indeed, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough*

*v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, to obtain habeas relief in federal court, a state prisoner must show the state court's rejection of his or her claims was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III.

Petitioner asserts the following five grounds for federal habeas relief:

I. A criminal defendant is guaranteed the right to a speedy trial under our federal and state constitutions. The thirty-three-month delay between [Petitioner]'s arrest and his trial was presumptively prejudicial and violated his right to a speedy trial. Therefore, [his] convictions should be reversed.

II. [Petitioner]'s Fifth and Fourteenth Amendment due process rights were violated when propensity evidence was admitted under MRE 404(b) to show a common plan, scheme, or system. The evidence showing that Detective Surface found a Taser in [Petitioner]'s car several months after the alleged incident did not show a common design. Therefore, the propensity evidence should have been excluded.

III. [Petitioner]'s due process rights were violated by the evidence not being sufficient for a rational trier of fact to find guilt beyond a reasonable doubt. The evidence presented against [Petitioner] came from two witnesses that were completely unbelievable and not competent to testify. Therefore, [his] convictions must be reversed.

IV. A defendant is denied his right to the effective assistance of counsel when trial counsel's performance falls below an objective standard of reasonableness, and the representation so prejudices the defendant as to deprive him of a fair trial. [Petitioner's trial] counsel's: (1) failure to request dismissal of the charges for violation of [Petitioner]'s right to a speedy trial; (2) failure to request a cautionary instruction to the jury on its consideration of the propensity evidence; (3) failure to request that the testimony of Cordario Colter and SK be stricken; and, (4) agreement with the prosecutor to admit all of the forensic evidence through the testimony of Jennifer Morgan; was unreasonable and prejudiced [Petitioner]. Therefore, [Petitioner] was denied his right to the effective assistance of counsel.

V. The prosecutor has a duty to see that the defendant receives a fair trial and may only procure a conviction using methods in accord with the fair and impartial administration of justice. The cumulative effect of the prosecution's

> introduction of Cordario Colter's incredible and incompetent testimony prejudiced [Petitioner] and denied him a fair trial.

ECF No. 1 at PageID.20, 24, 29, 35, 41.

Each ground will be considered in turn, after addressing a brief threshold issue.

### A.  Exhaustion and Procedural Default

As a threshold issue, Respondent argues that Petitioner did not exhaust portions of his second claim and procedurally defaulted his first and fifth claims. *See generally* ECF No. 8. But this Court need not consider these threshold arguments and can properly proceed to the merits.

Procedural default is not a jurisdictional bar to review the merits of a habeas petition. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural default issue before deciding against the petitioner on the merits.") (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Likewise, exhaustion is not a jurisdictional issue, and unexhausted claims may be decided on the merits if clearly meritless. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987). In the interest of efficiency and completeness, this Court will proceed directly to analyze the merits of Petitioner's habeas claims. *See Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) (noting courts may "reach the merits of a petitioner's claim" before analyzing procedural default or exhaustion, especially when the "procedural issues are complicated" but the "merits are easily resolvable").

### B. Speedy Trial

In his first claim, Petitioner argues that his right to a speedy trial was violated by pretrial delay. ECF No. 1 at PageID.20–23. But Petitioner raised this argument on direct appeal, and the Michigan Court of Appeals rejected it for two reasons. First, the court concluded Petitioner "affirmatively waived" his speedy trial rights when he decided to retain new counsel near the eve of trial:

> After [Petitioner] requested new counsel, the trial court informed him that the delay appointing new counsel would interfere with his right to a speedy trial. [Petitioner] confirmed that he understood. The trial court then asked [Petitioner] if he was willing to waive his right to a speedy trial, to which [he] responded that he was.
>
> [Petitioner] argues that he should not be held accountable for this waiver because the trial court effectively forced him to waive the right. Yet [he] was not forced to waive his right; he chose to waive the right so that new counsel would have time to become familiar with the case. [He] was solely responsible for his decision to request new counsel the day that trial was scheduled to begin, and it was within the trial court's discretion to grant or deny that request. The trial court permitted the change of counsel, conditioned on [Petitioner] waiving his right to a speedy trial to allow his new counsel time to get up-to-speed on the case. [Petitioner] accepted that condition and waived his right to a speedy trial.

*Evanish*, 2020 WL 2095935, at *2. Second, the Michigan Court of Appeals alternatively concluded that Petitioner's trial "commenced within a reasonable time." *Id.* n. 1 (finding "only an 11-month delay" between Petitioner's arrest for the assault of SK and his trial). This decision was not contrary to federal law.

The Sixth Amendment provides criminal defendants with the right to a speedy trial. U.S. CONST. amend. VI. But a defendant's Sixth Amendment speedy trial rights do not attach before arrest. *United States v. Marion*, 404 U.S. 307, 321 (1971); *United States v. MacDonald*, 456 U.S. 1, 7 (1982). So the relevant timeframe for a speedy trial analysis is between arrest and trial. To determine whether this right has been violated, Courts must balance the following four "*Barker*" factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 528 (1972).

The length of the delay is a threshold factor. "[U]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other facts that go into the balance." *Barker*, 407 U.S. at 530. Generally, a "one-year delay between accusation and the beginning of trial is generally considered 'presumptively prejudicial.'" *United States v. Cope*, 312

F.3d 757, 777–78 (6th Cir. 2002) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). Where the delay is not presumptively prejudicial, a defendant's Sixth Amendment right has not been violated, and the remaining *Barker* factors need not be considered. *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006).

Here, Petitioner's speedy trial rights were not violated. As the Michigan Court of Appeals explained, Petitioner's speedy trial clock did not begin ticking until SK's assault complaint was filed on August 1, 2017. *Evanish*, 2020 WL 2095935, at *2 n. 1. Although the 11-month delay between the assault and Petitioner's trial is likely presumptively prejudicial, the remaining three *Barker* factors outweigh this presumptive prejudice and reveal no constitutional violation. At least two months of the delay were caused by Petitioner's last-minute decision to retain new counsel. And Petitioner never asserted his speedy trial right. To the contrary, he affirmatively waived it. *See Barker*, 407 U.S. at 532 ("We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."). Lastly, Petitioner has not shown that this 11-month delay prejudiced him. Prejudice, for Sixth Amendment purposes, is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Id.* That is, (1) avoiding oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the impairment of defenses. *Id.* Petitioner has not even attempted to show such prejudice, *see* ECF No. 1 at PageID.21–23, and no prejudice is evident to this Court.

For these reasons, Petitioner's first habeas claim lacks merit.

### C. Taser Testimony

So too does his second claim. Petitioner argues that the trial court erred in admitting a taser "found . . . in [his] car several months after the alleged incident." ECF No. 1 at PageID.24.

To the extent Petitioner argues this evidence was not admissible under Michigan Rule of Evidence 404(b), *id.* at PageID.23–26, such an argument is non-cognizable on federal habeas review.[1] *See Skrzycki v. Lafler*, 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004) (collecting cases) ("Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief."). Indeed, evidentiary rulings are only cognizable on federal habeas review if they deny fundamental fairness and deprive a defendant of due process. *Id.* (citing *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994)).

Recognizing this precedent, Petitioner argues that the admission of the taser violated his "due process rights." ECF No. 1 at PageID.24. It did not. The admission of evidence only deprives a defendant of due process when the admission is "extremely unfair" and violates "'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (noting, to violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental").

Petitioner has not satisfied this showing. Far from fundamentally unfair, evidence that Petitioner possessed a taser was necessary to convict him of possessing a "weapon directing an electrical current." *See* MICH. COMP. LAWS § 750.224a. And Petitioner has not identified any clearly established Supreme Court precedent that would preclude admission of this evidence. *See* ECF No. 1 at PageID.24–26. Nor could he. *See Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir.

---

[1] Petitioner's argument is also misplaced. The trial court did not admit the taser as evidence of other crimes, wrongs, or acts subject to Michigan Rule of Evidence 404(b). *Evanish*, 2020 WL 2095935, at *3. Instead, the taser was admitted as "evidence of whether [Petitioner] possessed a [t]aser"—a "necessary" element of the prosecution's possession-of-a-taser charge under MICH. COMP. LAWS § 750.224a. *Id.* (noting "the evidence of the Taser was not other-acts evidence").

2012) ("The Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of relevant evidence, no matter how prejudicial, amounted to a violation of due process").

Accordingly, Petitioner is not entitled to relief on his second habeas claim.

### D. Competency and Evidence Sufficiency

In his third claim, Petitioner argues that his "[d]ue process rights were violated" and his conviction was not supported with sufficient evidence because "[t]he evidence . . . against [him] came from two witnesses"—SK and Colter—who Petitioner contends "were completely unbelievable and not competent to testify." ECF No. 1 at PageID.29, 30.

The Michigan Court of Appeals rejected this argument and found both SK and Colter were competent to testify under applicable state evidentiary law. *Evanish*, 2020 WL 2095935, at *3–4. In Michigan, "[a]ll witnesses are presumed to be competent to testify." *People v. Watson*, 629 N.W.2d 411, 420 (Mich. Ct. App. 2001). And Michigan Rule of Evidence 601 provides that "[e]very person is competent" to testify unless they lack "sufficient physical or mental capacity" or do not have "a sense of obligation to "testify truthfully[.]" Mich. R. Evid. 601. Applying this state law, the Michigan Court of Appeals concluded that Petitioner's arguments challenged SK and Colter's *credibility*, not *competency*. *Evanish*, 2020 WL 2095935 at *3–4 ("Ultimately, both Colter and SK followed counsel's questions clearly and gave articulate answers throughout their testimony. Any contradictory testimony they offered affected their credibility, and the jury was instructed on its role in assessing witness credibility.").

Again, alleged errors in the application of state law are non-cognizable on federal habeas review. *See Skrzycki*, 347 F. Supp. 2d at 455. To the extent Petitioner argues the admission of SK's testimony and Colter's testimony deprived him of federal due process, such an argument lacks

- 10 -

merit. "[T]he Supreme Court has not set forth a definition of witness competence required by the Due Process Clause." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012). But nothing in the record suggests that SK's testimony or Colter's testimony violated notions of fundamental fairness. Petitioner argues Colter was incompetent because he changed his story and was testifying after pleading guilty to "[en]sure . . . a lower prison sentence." ECF No. 1 at PageID.32. But, as the Michigan Court of Appeals aptly explained, there "is no indication that [Colter's plea deal impaired] his capacity or sense of obligation to testify truthfully," and his changing testimony was a matter of credibility—which the jury was instructed on and Petitioner's trial counsel could have explored on cross-examination. *See Evanish*, 2020 WL 2095935, at *3. As for SK, Petitioner argues she was incompetent because she "used heroin and crack cocaine" before she testified and "could not remember" certain aspects of her assault. ECF No. 1 at PageID.32–33. But, again, this impacts her credibility, and Petitioner had the opportunity to highlight these concerns through counsel on cross-examination. *Evanish*, 2020 WL 2095935, at *4.

In sum, Petitioner's third ground for habeas relief is largely non-cognizable and otherwise lacks merit. *See Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (rejecting habeas claim that a witness was incompetent to testify at the petitioner's trial in part because the petitioner's attorney "had wide latitude in cross-examining" the witness at trial).

### E. Ineffective Assistance of Counsel

In his fourth claim, Petitioner contends that his trial counsel was constitutionally ineffective for four reasons. ECF No. 1 at PageID.35. The Michigan Court of Appeals already rejected each of these four specific arguments. *Compare id. with Evanish*, 2020 WL 2095935, at *4. And this rejection accorded with federal law.

In *Strickland v. Washington*, the Supreme Court promulgated the preeminent "performance and prejudice" test for whether a counsel's representation is constitutionally sufficient. A criminal defendant—or habeas petitioner—asserting ineffective assistance must show (1) that counsel's performance was objectively deficient, and (2) that the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Under the first "performance" prong, a defendant must show that their counsel's representation "fell below an objective standard of reasonableness." *Nichols v. Heidle*, 725 F.3d 516, 539 (6th Cir. 2013). However, when evaluating performance, courts must presume that the counsel's conduct "falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Moreland v. Robinson*, 813 F.3d 315, 328 (6th Cir. 2016) (quoting *Bell v. Cone*, 535 U.S. 685, 702 (2002)). Indeed, "defense counsel need not 'pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.'" *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). And counsel does not render constitutionally deficient performance by failing to raise a meritless issue. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020). Under the second "prejudice" prong, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.

Notably, the *Strickland* standard is "all the more difficult" for a habeas petitioner to meet because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted). Accordingly, "the question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s

deferential standard." *Id.* In other words, to succeed on his ineffective-assistance habeas claim, Petitioner must (1) overcome *Strickland*'s presumption that his attorney's performance was adequate, and (2) demonstrate that the state court's application of the *Strickland* standard was unreasonable. *Kelly v. Lazaroff*, 846 F.3d 819, 831–32 (6th Cir. 2017). But he has not done so.

First, Petitioner claims that his trial counsel was ineffective because he did not seek to dismiss the prosecution in light of Petitioner's contention that his Sixth Amendment speedy trial rights were being violated. ECF No. 1 at PageID.35–36. As discussed above, Petitioner's speedy trial rights were not violated. *See supra* Section III.B. So Petitioner's trial counsel was not constitutionally ineffective for failing to raise this meritless issue. *See Moreland*, 813 F.3d at 328.

Second, Petitioner argues that his trial counsel was constitutionally ineffective because he did not request a cautionary jury instruction regarding the admission of the taser. ECF No. 1 at PageID.35–36, 38. Specifically, Petitioner argues that the jury should have been instructed on the "limited use of [this] propensity evidence." *Id.* at PageID.37–38. But, as explained, the taser was *not* offered as propensity evidence—it was offered as proof of Petitioner's possession. *See supra* Section III.C. n. 1. So a limiting instruction was unnecessary, Petitioner's counsel did not render objectively unreasonable performance, and the Michigan Court of Appeals did not reach an unreasonable decision when it rejected Petitioner's second ineffective-assistance argument.

Third, Petitioner argues that his trial counsel was ineffective because he "failed to request that the testimony of . . . Colter and [SK] be stricken." ECF No. 1 at PageID.38. But, as explained, the trial court and the Michigan Court of Appeals agree that Colter's testimony and SK's testimony were admissible. *See Evanish*, 2020 WL 2095935 at *4; *see also supra* Section III.D. Petitioner's trial counsel was not constitutionally ineffective for failing to raise a meritless objection to their testimony. *See Moreland*, 813 F.3d at 328.

Fourth and finally, Petitioner contends his counsel was constitutionally ineffective because he agreed with the prosecutor to "admit all of the forensic evidence through the testimony of Jennifer Morgan," a forensic scientist with the Michigan State Police and an expert in DNA testing and identification. ECF No. 1 at PageID.39. Petitioner argues, like he did on direct appeal, that Morgan "did not say that she personally performed" the relevant DNA testing so, "*[i]f* [she] was not the forensic scientist that performed the testing," his counsel "should have sought to exclude the evidence as a violation of [Petitioner]'s right to confrontation." *Compare id.* (emphasis added) *with* ECF No. 9-10 at PageID.782. But the Michigan Court of Appeals rejected this argument because Petitioner did not argue that "the evidence was . . . inadmissible; he merely argue[d] that defense counsel could have objected to Morgan presenting it and requested that the prosecutor call others to present the evidence." *Evanish*, 2020 WL 2095935 at *4. So, the Michigan Court of Appeals held, the jury would have considered this evidence regardless of who presented it and, thus, Petitioner "did not establish . . . prejudice[]." *Id.*

This reasoning is reasonable under federal law. True, "[r]eports memorializing the work performed by laboratory analysts when carrying out forensic duties are testimonial statements subject to" a criminal defendant's Sixth Amendment confrontation rights. *Phillips v. Hoffner*, 755 F. App'x 481, 490 (6th Cir. 2018) (citing *Holland v. Rivard*, 800 F.3d 224, 243 (6th Cir. 2015)). So, theoretically, the forensic reports should have been introduced by the analysts who authored them. *See Holland*, 800 F.3d at 243 ("The Confrontation Clause prohibits the introduction of testimonial statements of witnesses absent from trial, unless the declarant is unavailable, and . . . the defendant has had a prior opportunity to cross-examine the declarant." (internal quotations and modifications omitted)). Yet Morgan's trial testimony suggests that she only authored one of the reports she introduced. *See* ECF No. 9-7 at PageID.494. But a defendant may waive their Sixth

Amendment confrontation rights. *See Carter v. Sowders*, 5 F.3d 975, 981 (6th Cir. 1993) (noting this waiver, like any other waiver of constitutional rights, must be knowing and voluntary). Neither Petitioner, Respondent, nor the Michigan Court of Appeals discussed whether Petitioner's trial counsel's agreement to enter all reports through Morgan reflected Petitioner's knowing and voluntary waiver. Assuming *arguendo* that it did not, it appears the introduction of all lab reports through Morgan may have violated Petitioner's Sixth Amendment confrontation rights.

Here's the problem: Petitioner does not bring a stand-alone Sixth Amendment confrontation claim. He instead argues that his counsel was constitutionally ineffective for failing to recognize the confrontation problems posed by his stipulation. To succeed on this later claim, Petitioner must show that his trial counsel's decision to stipulate to Morgan's lab-report admission prejudiced him—that, but for this stipulation, "the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. He made no such showing. Indeed, in his argument before both the Michigan Court of Appeals and this Court, he does not argue that the forensic reports—regardless of authorship—were inadmissible or could not have been considered by the jury, especially when presented by other analysts. ECF No. 1 at PageID.39. He simply argues that his counsel's agreement to introduce all reports through Morgan was "not a reasonable trial strategy." *Id.* This is insufficient. *See Thomas v. Lecureux*, 8 F. App'x 461, 464 (6th Cir. 2001) ("Disagreement over trial strategy is not a basis for ineffective assistance of counsel.").

At bottom, all of Petitioner's ineffective-assistance-of-counsel claims lack merit. So, Petitioner is not entitled to habeas relief on this ground.

### F. Prosecutorial Misconduct

In his fifth and final claim, Petitioner argues that the prosecutor committed misconduct by calling Petitioner's brother—Cordario Colter—to testify as a witness. ECF No. 1 at PageID.41-

43. The Michigan Court of Appeals rejected this argument. *Evanish*, 2020 WL 2095935 at *5. And this decision was not contrary to federal law.

Prosecutorial conduct violates a criminal defendant's federal constitutional rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* at 181 (internal quotation omitted). To constitute a due process violation, the conduct must have been "so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Washington v. Hofbauer*, 228 F.3d 689, 708 (6th Cir. 2000).

Petitioner does not even attempt to meet this burden. Indeed, Petitioner does not identify any specific prosecutorial conduct other than the "introduction of . . . Colter's testimony" and does not explain how any aspect of this broad testimony rendered his trial fundamentally unfair. *See* ECF No. 1 at PageID.41. To the extent Petitioner conclusively argues in the heading of this habeas claim that Colter was "incompetent," ECF No. 1 at PageID.11, such an argument fails for reasons explained above, and thus does not rise to the level of prosecutorial misconduct. *See supra* Section III.D. Thus, Petitioner's final habeas claim lacks merit.

**IV.**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

- 16 -

presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted).

In this case, reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief. Therefore, a COA will be denied. Petitioner will also be denied leave to appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.

Accordingly, it is **ORDERED** that the Petition for a Writ of Habeas Corpus, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED.**

Further, it is **ORDERED** that leave to appeal *in forma pauperis* is **DENIED.**

**This is a final order and closes the above-captioned case.**

Dated: August 26, 2025　　　　　　　　　　　　　s/Thomas L. Ludington
　　　　　　　　　　　　　　　　　　　　　　　　THOMAS L. LUDINGTON
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge